IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANK N. SIGNORIELLO, JR.     *

         Plaintiff,    *

    vs.                  * CIVIL ACTION NO. MJG-11-3077

MOTIVA ENTERPRISES LLC et al.   *

         Defendants    *

\*   \*   \*   \*   \*   \*   \*   \*   \*

<u>MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT</u>

The Court has before it Defendants' Motion for Summary Judgment [Document 63], Defendant-Counterclaim Plaintiff Motiva Enterprises LLC's Motion for Summary Judgment on Counterclaims I and II [Document 64], and the materials submitted relating thereto. The Court has held a hearing and had the benefit of the arguments of counsel.

I.    <u>BACKGROUND</u>[1]

Plaintiff Frank N. Signoriello, Jr. ("Signoriello"), was an employee of Defendant Motiva Company ("Motiva")[2] from October

---

[1]     The "facts" herein are as alleged by Plaintiff and are not necessarily agreed upon by Defendants.

[2]     Motiva Company stated in its Memorandum of Law in Support of Defendants' Motion for Summary Judgment [Document 63-1] that "[i]n his Amended Complaint, Plaintiff refers to Defendant Motiva Enterprises LLC as his employer rather than Defendant Motiva Company." [Document 63-1] at 1 n.1. According to Motiva Company, "Motiva Enterprises LLC, [is] an affiliated company of Motiva Company." [Document 12-1] at 2. The issue of whether Motiva Enterprises LLC was improperly named as a Defendant, is

2000 until July 2011. Signoriello worked for Motiva at the Curtis Bay Terminal in Baltimore, Maryland until 2008 when he was transferred to Brooklyn, New York. In 2009, he was promoted to Terminal Supervisor.

At the outset of his employment, Signoriello was provided with a copy of the Motiva Code of Conduct ("Code") which included a notice that employees were not to engage in actions that involved a conflict of interest with Motiva or that otherwise violated the Code. The Code included a statement guaranteeing that an employee who reported a Code violation would be protected from retaliation for making the report. Specifically, the Code stated that "[y]ou can be absolutely sure that retaliation of any kind directed against anyone who reports an issue concerning the Code of Conduct will not be tolerated." [Document 12-2, Ex. A, Motiva Code] at 8.

The Court held in the Memorandum and Order Re: Motion to Dismiss [Document 22] that Signoriello had alleged facts in the Complaint sufficient to support a plausible claim that the Code's statement of protection from retaliation was sufficiently definite and specific to constitute an enforceable promise. Through the instant motion for summary judgment, Defendants now assert that the evidence is inadequate to establish such a

---

not material for purposes of resolution of the instant motions. Herein, the Court will refer to Motiva Enterprises LLC and Motiva Company collectively as "Motiva" or "Defendants."

claim. Hence, they seek summary judgment with regard to Signoriello's claim against them. Defendants also seek summary judgment on two of their six Counterclaims, Counterclaim I (conversion) and Counterclaim II (breach of fiduciary duty).

II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement: The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically. After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). Thus, in order to defeat a motion for summary judgment, "the party opposing the motion must present evidence of specific facts from which the

finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

When evaluating a motion for summary judgment, the Court must bear in mind that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Rule 1 of the Federal Rules of Civil Procedure).

III. MATERIAL[3] "FACTS"

For purposes of resolving the instant motions, the Court assumes that a jury would find that the Motiva Code created contractual rights for Signoriello. Thus, it is assumed that there was a contract that included with the following terms:

> You can be absolutely sure that retaliation of any kind directed against anyone who reports an issue concerning the Code of Conduct will not be tolerated. Motiva will protect its employees against retaliation; in turn, it expects employees who know or suspect that retaliation has taken place to report it through the Helpline or directly to the Compliance office.

[Document 12-2, Ex. A, Motiva Code] at 8.

Signoriello has stated in his affidavit:

---

[3] The parties present factual issues as to various matters, but the evidence does not present a genuine issue of material fact.

4

6. In or about January/February, 2010, James Lintz approached me with an envelope of cash and some "tally sheets" which reflected payments received by Mr. Lintz from vending contractor, John Craft. Mr. Lintz requested that Plaintiff put the cash and tally sheets in Plaintiff's office safe until he (Lintz) asked for it. Photocopies of the cash and tally sheets are attached hereto as <u>Exhibit 2-A</u>.

7. I believed that Mr. Lintz was engaging in conduct in violation of the Motiva Code of Conduct (the "Code"); to wit, acceptance and receipt of "kickbacks" from Mr. Craft's (<u>sic</u>) for vending machines.

8. Shortly thereafter I called Roger Leitch and orally reported Mr. Lintz's activities/conduct which, I believed, was/were violation of the Code. In reporting the activities to Mr. Leitch, I believed that I was complying with the obligations/requirements set forth on Page 5 of the Code. I further believed that Mr. Leitch (who was Mr. Lintz's supervisor) was a proper person to deal with the situation.

9. At the time I reported Mr. Lintz's activities to Mr. Leitch, I was aware of the non-retaliation provisions contained in the Code (Page 5) and I relied upon those prohibitions because I believed that I would be "protected" from any retaliation, including but not limited to termination of my employment, for reporting Mr. Lintz's activities/conduct.

10. I was advised by Mr. Leitch that he would "look into the matter." I did not hear anything further from him about it until after I sent the e-mail to Mr. Leitch on March 29, 2011 (see ¶ 12).

[Document 65-2, Ex. 2, Signoriello Aff.] at 3.

On March 29, 2011, Signoriello sent a lengthy e-mail to Leitch which stated, in relevant part,[4] "I have Cash money Given to me by Jim Lintz to hold that he collects from venders  If this were I taken this money I would be fired or any other motiva Employee." [App.] at 1.  On July 21, 2011, Motiva terminated Signoriello's employment.  Signoriello claims that the termination was in retaliation for his reporting the vending machine cash issue.  Motiva contends that there were legitimate nonretaliatory reasons for the termination of Signoriello's employment.

Motiva contends that from August 2009 through March 2011 Signoriello was engaged in an inappropriate business relationship with Chesapeake Hose & Fitting, a company owned by his then-wife (later ex-wife), which included "[a]n extraordinary high volume of material purchased from Chesapeake," incomplete expense statements, and total expenditures "for an amount of material inconsistent with what [Motiva's Brooklyn] terminal could have used."  [Document 63-1] at 13.  Motiva also claims that Signoriello failed to comply with a Code requirement to report this potential conflict of interest.  Id. at 15, 26.

In the instant summary judgment context, the Court will disregard these contentions.  The Court will accept as correct,

---

[4] The complete e-mail is attached hereto as Appendix A.

6

Signoriello's position, as stated in his Opposition to the instant motion: "It was only after the Plaintiff's e-mail of March 29, 2011 (the protected activity) that Motiva's relationship with Chesapeake suddenly become (sic) problematic and the business transactions initiated by Plaintiff became 'questionable expenditures.'" [Document 65] at 17.

IV. PLAINTIFF'S CLAIM

A. Timing of Signoriello's Report

The contractual right to protection from retaliation in the Code is provided to "anyone who reports an issue concerning the Code of Conduct." The contract can only reasonably be interpreted to include an implied condition that an alleged Code violation must be reported within a reasonable amount of time after the employee becomes aware of it.

The parties present conflicting evidence regarding the timing of Signoriello's report of the vending machine cash issue. Signoriello states that he called Leitch shortly after his discovery of the issue in January or February 2010. This would be a communication within a reasonable amount of time after Signoriello became aware of the alleged Code violation. Hence, the communication would – by virtue of its timing – comply with Signoriello's Code obligation and could be found to

7

provide him with a cause of action for retaliation for making the communication.

Motiva has presented Leitch's testimony in an affidavit that there was no such telephone communication and that the first notification of the vending machine issue was made in the email sent to him from Signoriello on March 29, 2011. On this version of the facts, Signoriello would not have complied with his Code obligation to report an alleged violation within a reasonable amount of time after its discovery because no reasonable jury could find that a delay of more than a year in reporting the alleged violation would be Code compliant.

However, in the instant summary judgment context, the Court will assume that Signoriello made a timely report of the alleged Code violation and that he thus could have a valid breach of contract claim if Motiva had retaliated against him for making the report in the January or February telephone call to Leitch.

### B.   Causation

Signoriello has not presented evidence from which a jury reasonably could find that the adverse employment action at issue – the termination of his employment on July 21, 2011 – was in retaliation for his reporting the vending machine cash issue to Leitch in a telephone call shortly after January or February 2010. Signoriello has not presented evidence adequate to

support a finding of causation.  Moreover, temporal considerations refute his position.

Accepting Signoriello's statement that he reported the vending machine cash issue to Leitch shortly after January or February 2010, the allegedly retaliatory termination occurred some sixteen months later in July 2011.  This time gap is so substantial that it tends to refute, rather than support, Signoriello's causation contention.

Moreover, the "fact" – as contended by Signoriello, that "It was only after the Plaintiff's e-mail of March 29, 2011 (the protected activity) that Motiva's relationship with Chesapeake suddenly become (sic) problematic and the business transactions initiated by Plaintiff became 'questionable expenditures.'" [Document 65 at 17] - directly contradicts the contention that any retaliation against Signoriello was for an early 2010 communication rather than a March 2011 one.  As noted, there could be no valid claim for retaliation in response to an alleged whistleblower report that was delayed for more than a year after discovery of the alleged Code violation.

C.   Resolution

On Signoriello's version of the timing of his report, no reasonable jury could find retaliation due to the absence of proof of causation.  On Motiva's version of the timing of the

9

report, no reasonable jury could find the report to have been made within a reasonable amount of time so as to provide Signoriello with contract rights.

Therefore, Motiva is entitled to summary judgment on Signoriello's claim.

V.   COUNTERCLAIMS I AND II

From 2009 until early 2010, Signoriello received from Lintz $850 in cash and certain documents related to the vending machine cash matter discussed herein.  Signoriello does not deny that the cash and documents were, and are, not his property but the property of Motiva.

Pursuant to Lintz's instructions, Signoriello placed these materials in a safe to which Signoriello, but not Lintz, had the combination.  Signoriello admits that, upon his termination from employment by Motiva, he took the $850 and the documents with him and that he has refused – to this date – to provide these to Motiva.

Signoriello presents no reasonable explanation for his taking the money and for his not returning it promptly to Motiva.  He makes no claim that he has any ownership or other right to the property.  His contention that, somehow, the money in question might belong to someone other than Motiva is baseless.

10

Therefore, Motiva is entitled to summary judgment on its Counterclaim I (conversion) and its Counterclaim II (breach of fiduciary duty).

## VI. CONCLUSION

For the foregoing reasons:

1. Defendants' Motion for Summary Judgment [Document 63] and Defendant-Counterclaim Plaintiff Motiva Enterprises LLC's Motion for Summary Judgment on Counterclaims I and II [Document 64] are GRANTED.

2. By December 20, 2013, Motiva shall either:

    a. Agree to the dismissal of Counterclaims III through VI with prejudice, subject to reinstatement if the judgment entered dismissing Signoriello's claim is reversed, or

    b. Arrange a telephone conference, to be held by December 20, 2013, to discuss scheduling further proceedings relating to Counterclaims III through VI.

3. Judgment shall be entered by separate Order.

SO ORDERED, this Tuesday, November 19, 2013.

/s/
Marvin J. Garbis
United States District Judge

# APPENDIX A

| From: | roger.leitch@motivaent.com |
|---|---|
| Sent: | Monday, April 04, 2011 9:50 AM |
| To: | gary.vaughan@shell.com |
| Cc: | twigg.bohlen@motivaent.com |
| Subject: | FW: 7 IPF ? |
| Attachments: | 1money.jpg |

Gary

As per discussion

This is the Email with the Specifics

I have many Emails summarizing issues between Jim + Frank that I can provide

---

**From:** Signoriello, Frank N MOTIVA-DVM/513
**Sent:** Tuesday, March 29, 2011 2:58 PM
**To:** Leitch, Roger P MOTIVA-DVM/51
**Cc:** P.weisslaw@comcast.com
**Subject:** RE: 7 IPF ?

Roger, I would like to thank you for taken your time to respond to my email . I respect and appreciate your opinion of my situation. I feel with the knowledge you have available to you it's truly an honest opinion on your part . But I feel that my Rating had no facts to back up accusations made by Jim Lintz or service providers . I have changed the face of Brooklyn Motiva without any recognition and need none, but it is hard for me to stand by and be judged with no truth or fact to back it up . Bridgeport and Inwood both had environmental and PQ issues last year and Steve M. from Inwood was promoted . I Copied you on the letter I wrote Jim Lintz about all I have accomplished here in Brooklyn and I received a 7 . I in no way care about the Money and if the 7 was earned by some type of failure on my part I would except it and move forward to do better in the future . I didn't and don't feel a mentor was needed in the first place it was decided I needed one from the opinion of others I had no contact with.. that were acting from false information and no facts . I have worked for Motiva now for 11 years And you have been there every step of the way since I worked under mike cardinal and Ken Watson as an operator to Steve Majid as an operator to a supervisor . I have never had these type of issues and I am embarrassed that I do now . You came to me on one of your visits and asked how I was doing and I told you that Jim and I do not get along . You responded that I would need to learn how to work with different management types and I agreed and moved forward . Jim Lintz would like me to conform with his management type and I feel it's not what I want to do . Its disrespectful mean and against all Company code of conduct and policies . I have Cash money Given to me by Jim Lintz to hold that he collects from venders If this were I taken this money I would be fired or any other motiva Employee .I have contractor bids given for the same job where a more experienced contractor came in cheaper but was told not to use them cause they would not cross the line at the time of the strike . To my knowledge all contractors are held to the same safety standards by pics and have the same right to work and bid as long as they comply with the pics standard. This is clearly retaliation and against Motiva policy as well . I was told to Follow a man who was on a DML and make sure he does not make it passed his probation period This is against federal discrimination laws . I have numerous discussions with Jim Lintz on video and recording do to me fearing for my job by following his direction. Over the past 2 years Roger I have had to deal with issues that have nothing to do with running a terminal such as retaliation head hunting hidden cameras theft of gasoline and still managed to keep it all together even when being undermined and intimidated by Jim Lintz . I am not Collage educated but have had dealings with people like Jim Lintz in my Life and Know how to Protect myself from him. I have all the documentation needed to do so .I am asking again for Help. I am being intimidated belittled and harassed on a daily bases . I have been seeing an outside therapist

due to the way I am being treated at work. I should not have to work in this hostile work environment anymore . Thank you again for Taking the time to read and assist with this serious dilemma .

---

**From:** Leitch, Roger P MOTIVA-DVM/51
**Sent:** Monday, March 28, 2011 3:53 PM
**To:** Signoriello, Frank N MOTIVA-DVM/513
**Subject:** RE: 7 IPF ?

Frank

Sorry to hear that your Mother is having issues. I hope things turn around.

After your session with Jim, let me know if you still want to discuss with me.

Frank...I do want you to know that your rating was discussed and agreed to by Motiva Management ( Twigg, me, HR) and we got input from Service providers. We spend much time reviewing ratings each year.

I understand that you feel that having no Safety, no Environmental nor PQ incidents should be the basis for a higher rating. These are three major goals that we all are expected to meet and are kinda " table Stakes" , that is, accomplishing these goals allow us to stay in business. Failures on any of these goals will impact individual ratings, but there are many other factors that are considered when rating employees. These factors are compared with others in the same Pay Grade as to How the Job is performed, Knowledge base of the Individual, Consistency in performance, etc. The higher one's PG the more intense the competition for ratings.

I know that Jim's intension in working with you regarding your performance has been to benefit you and to assist you in your development. I assure you that he has no ill will towards you and only wants you to be a more valuable employee.

Some months back we offered the services of one of our most respected managers to function as a " Mentor" for you. I hope you have taken the opportunity to use this process to assist you in your development.

Another tool that we can work with HR for you is the 360 Degree Feedback program where in selected individuals ( agreed to by your Manager ) are sent requests to rate performance and to provide comments supporting their input  in several areas. This tool can identify " blind spots" where you may think you are doing well and others see differently.

Remember, the rating is done each year and it is very possible to make significant improvement based on performance.

---

**From:** Signoriello, Frank N MOTIVA-DVM/513
**Sent:** Monday, March 28, 2011 6:31 AM
**To:** Leitch, Roger P MOTIVA-DVM/51
**Subject:** RE: 7 IPF ?

Good morning Roger , I am Sorry I missed your visit and the opprutunity to speak with you.  I truly appreciate you taken time to speak with me . I have requested a meeting with Jim this week and he has excepted.  At this meeting I will do my best to get in line with Jims goals and to resolve any issues he may have with me in the work place.